**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM M. LEONHAUSER : | |
| : | Civil Action No. 1:11-cv-0341 |
| Plaintiffs, : | |
| : | Judge William W. Caldwell |
| v. : | |
| : | Magistrate Judge Mannion |
| RONALD A. LONG, M.D., et al. : | |
| : | **Filed Via Electronic Case Filing** |
| Defendants : | |

## CORRECTIONS DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

### Procedural History

On February 22, 2011, William Leonhauser, a *pro se* inmate incarcerated at the State Correctional Institution at Smithfield ("SCI-Smithfield"), filed a civil rights action pursuant to 42 U.S.C. § 1983 against Drs. Ronald Long and Christine Doll (non-Department employees not represented by the Undersigned Counsel) and SCI-Smithfield Corrections Health Care Administrator William Dreibelbis. *See* Document No. 1. On April 27, 2011, the Undersigned Counsel waived service and

entered an appearance for William Dreibelbis (hereinafter, "Corrections Defendant Dreibelbis").

## Statement of the Facts

Plaintiff avers that his serious medical needs are third-degree heart block and Parkinson's disease. *See* Complaint, ¶¶ 7, 8. In June 2001, Plaintiff had a pacemaker implanted. *See Id.,* ¶ 10. In December 2002, Plaintiff alleges that he was housed at SCI-Cresson where he received "above average medical treatment" and "two to three times per year Plaintiff was taken to see a neurologist for the Parkinson's disease, and two times per year to see a cardiologist for his heart condition." *See Id.*, ¶ 14. But, Plaintiff avers that upon being transferred to SCI-Smithfield, between March 2005 and April 2009, he was only taken to see a neurologist once and he was not taken to see a cardiologist. *See Id.*, ¶ 16. Plaintiff alleges that since April 2008, Drs. Long and Doll have provided him with medical care, and he is supposed to see a cardiologist at least twice a year and a neurologist at least twice a year. *See Id.*, ¶ 17. Plaintiff argues, *inter alia*, that Corrections Defendant Dreibelbis is liable for deliberate indifference to his serious medical needs because he allegedly did not schedule appointments with a cardiologist and a neurologist, the latter specialist appointment allegedly necessary because of Plaintiff's Parkinson's disease. *See* Complaint, ¶ 41. Plaintiff avers that when he would inquire as to seeing a neurologist about his Parkinson's disease, "the only

answer given was arrangements needed to be made via Mr. Dreibelbis' office. However, nothing more would be said about these appointments." *See Id.*, ¶ 29. Plaintiff avers that he eventually saw a cardiologist "after showing the medical staff at SCI-Smithfield that the pacemaker leads (wires) were beginning to poke through his chest skin." *See Id.*, ¶ 30.[1]

The remaining allegations concern Drs. Long and Doll, namely, that Plaintiff was prescribed a medication for high blood pressure when he suffers from low blood pressure and that these physicians continued to prescribe this medication for him, despite a recommendation from a local hospital that the drug be discontinued. *See Id.*, ¶¶ 18-28.

As relief, Plaintiff requests a declaratory judgment that, *inter alia*, Corrections Defendant Dreibelbis "violated the Plaintiff's rights pursuant to the Eighth Amendment for the acts of deliberate indifference to the serious medical needs of the Plaintiff b[y] not making the necessary arrangements for the Plaintiff to be seen by a specialist for the continued follow up on the Parkinson's disease,

---

[1] Plaintiff avers that the cardiologist at the Blair County Pacer Clinic remarked that she wanted to see how long it would take for the leads to come through the chest wall until such time as emergency surgery would be necessary. Plaintiff alleges that he filed a complaint and went to a different surgeon who performed the requisite procedure and informed Plaintiff that had he waited any longer, he would have gotten an infection. *See* Complaint, ¶¶ 30, 31. But Plaintiff contradictorily avers that Defendants refused to arrange replacement surgery on the grounds that the surgery was too expensive and unnecessary and that it was necessary to wait until the wires came through the chest of the chest wall. *See Id.*, Statement of Claim, ¶ 3.

3

which caused the Plaintiff to suffer from bouts of cramping due to the lack of proper and adequate medical treatment and care." *See Id.*, "Relief Requested, A(2). He also seeks $25,000.00 in compensatory damages against Corrections Defendant Dreibelbis. *See Id.*, B(3).

## Issue Presented

**Has Plaintiff failed to state a cognizable claim pursuant to 42 U.S. § 1983 against Corrections Defendant Dreibelbis for deliberate indifference to alleged serious medical needs under the Eighth Amendment?**

**Suggested Answer**: Yes.

## Argument

**A.  Standard to Be Utilized in Determining Whether to Grant a Motion to Dismiss.**

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Federal Rule of Civil Procedure 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is in fact entitled to relief, "in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) ("While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.) (internal citations omitted)

A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief." And "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 550 U.S. at 556 n. 3). Together, these cases require that a plaintiff allege the facts suggestive of the proscribed conduct with averments sufficient to raise a right to relief above the level of speculation. *Twombly*, 550 U.S. at 555, 563 n. 8.

In *Iqbal*, the Supreme Court stated that its discussion of pleading requirements for a complaint set forth in *Twombly* applies to all civil actions filed in the United States District Court. The Court further indicated that where the well-pleaded facts do not permit the Court to infer more than a mere possibility of misconduct, the complaint has failed to show that the pleader is entitled to relief. *Iqbal*, 129 S. Ct. at 1949.

In *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009), the United States Court of Appeals dealt with how to apply the Supreme Court's decision in *Ashcroft* to a 12(b)(6) motion to dismiss. It stated:

> After *Iqbal* . . . it is clear that conclusory or 'bare bone' allegations will no longer survive a motion to dismiss. 'Threadbare' recitals of the elements of a cause of action supported by mere conclusory statements do not suffice.
>
> To avoid dismissal, civil complaints must now set out sufficient factual matters to show that the claim alleged is facially plausible. This allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Further, the Court of Appeals provided specific instructions as to the standard for consideration of a motion to dismiss for failure to state a claim;
>
> First, the factual and legal elements of the claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.

The Court must then:

> . . . Determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

*Fowler*, 578 F.3d at 210-211. The test for plausibility requires the court to consider the claim in context and to draw on its judicial experience and common sense in making its determination. *Id.* at 211.

B.     **Corrections Defendant Dreibelbis**

As a preliminary matter, insofar as Plaintiff alleges that Corrections Defendant Dreibelbis did not arrange for him to be seen by a cardiologist or a neurologist, Department Policy 13.2.1, "Access to Health Care Procedures Manual," Section 1, "Inmate Health Care Plan," specifically, subsection 6, "Specialty Services," sets forth the procedures concerning access to specialty services and consultations.  *See* Department Policy 13.2.1, Section 1, a copy of which is available on the Department website at www.cor.state.pa.us.  The need for off-site specialty medical appointments is determined by the medical providers, who are employed by PHS; such determinations are not within the purview of Department employees such as Corrections Defendant Dreibelbis.

To establish an Eighth Amendment claim for a denial of adequate medical care, an inmate must demonstrate deliberate indifference to a serious medical need on the part of the prison officials.  *Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976) ("It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.").  Deliberate indifference exists "where the prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999). A mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis and subsequent treatment that the inmate receives does not establish a claim of deliberate indifference. *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Further, neither a negligent misdiagnosis nor an inadvertent failure to provide care establishes a claim of deliberate indifference. *Estelle*, 429 U.S. at 105-106.

When assessing the sufficiency of an Eighth Amendment deliberate medical indifference claim, "[t]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." *Farmer v. Carlson,* 685 F. Supp. at 1339 (quoting *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D. Kan. 1986)). The Third Circuit has stated that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette County, Pennsylvania*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979) (underlying quoted citation omitted).

Moreover, the Court of Appeals for the Third Circuit in *Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993), established that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is receiving treatment by the prison's

medical staff. The reasoning of *Durmer* is simple: if differences in opinion between two medical professionals cannot be a basis for an Eighth Amendment claim, then a medically, untrained corrections official cannot be found liable if he relies on the opinions of a medical professional. *Id.* at 69. In *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004), the court explained, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."

On their face, the allegations of the Complaint show that Plaintiff was under the care of Drs. Long and Doll. If Plaintiff was to be seen by a neurologist and/or a cardiologist, then such specialty appointments were within the purview of the treating physician(s) to order, not Corrections Defendant Dreibelbis. While Plaintiff avers that Corrections Defendant Dreibelbis did not (promptly) schedule a cardiology and a neurology appointment for him he does not aver that the medical providers directed Corrections Defendant Dreibelbis to do so. Further, there is nothing in the Complaint to suggest that Corrections Defendant Dreibelbis could not have reasonably relied on the decisions of the medical professionals retained by the Department to treat Plaintiff with regard to the ordering and scheduling of outside medical appointments. *See Durmer* 991 F.2d at 69 ("Neither of these defendants, however, is a physician, and neither can be considered deliberately

indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

## Conclusion

In light of the foregoing argument, Corrections Defendant Dreibelbis respectfully requests that this Court grant his *Motion to Dismiss*.

                                  Respectfully submitted,

                                  Office of General Counsel

By:  <u>s/ Maria G. Macus-Bryan</u>
       Maria G. Macus-Bryan
       Assistant Counsel
       Atty. Identification No.: 90947
       PA Department of Corrections
       1920 Technology Parkway
       Mechanicsburg, PA 17050
       Phone No.: (717) 728-7763
       Fax No:  (717) 728-0312
       Email: mmacus-bry@state.pa.us

Dated:  May 2, 2011

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM M. LEONHAUSER | : |
| | : Civil Action No. 1:11-cv-0341 |
| Plaintiffs, | : |
| | : Judge William W. Caldwell |
| v. | : |
| | : Magistrate Judge Mannion |
| RONALD A. LONG, M.D., et al. | : |
| | : **Filed Via Electronic Case Filing** |
| Defendants | : |

### CERTIFICATE OF SERVICE

I hereby certify that I am depositing in the U.S. mail a true and correct copy of the foregoing *Corrections Defendant's Brief in Support of Motion to Dismiss* in the above-captioned matter for service upon the following person(s) below:

<u>Service by first-class mail
addressed as follows</u>

William M. Leonhauser, EN-9387
SCI – Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652


<u>s/ Renée J. Roberts</u>
Renée J. Roberts
Legal Assistant
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
Phone No.: (717) 728-7763

Dated:  May 2, 2011