IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCRANTON, PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM M. LEONHAUSER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | Case No. 1:11-CV-00341 |
| RONALD A. LONG, M.D., et al. | : | [Honorable W. Caldwell, Judge] |
| | : | [Honorable Magaistrate Mannion] |
| Defendants | : | |

PLAINTIFF'S OBJECTIONS AND REBUTTAL

TO MEDICAL DEFENEDANTS MOTION TO DISMISS

FILED SCRANTON AUG 1 6 2011 PER_____ DEPUTY CLERK

NOW COMES, William M. Leonhauser, Plaintiff proceeding Pro Se, and respectfully submits the Plaintiff's "Objections" to the Medical Defendants Motion to Dismiss Plaintiff's Civil Action pursuant to the Federal Rules of Civil Procedures, Rule 12(b)(6), and provides the following in Support of Plaintiff's Objections and Rebuttal:

1. Plaintiff: WILLIAM M. LEONHAUSER, commenced his Pro-Se Civil Rights "Deliberate Indifference" Action against the Medical Defenedant's Doctor's Ronald A. Long, M.D. and Christine Doll, M.S. by filing the Complaint on February 22, 2011.

2. Plaintiff at all times relevant to the claims presented has been incarcerated at the State Correctional Institution at Smithfield, and has been at all times relevant to the claims presented been under the Medical Treatment and Care of the Medical Defendants.

3. Plaintiff respectfully submits that for the past <u>Six (6) Years</u> he has been under the Medical treatment and Care by <u>"One or Both"</u> of the Medical Defendants for his Serious Medical Needs including; (a) Parkinson's Disease; (b) Heart Disease (Third Degree Heart Block); and (c) Dual Chamber Pacemaker.

4. Plaintiff submits that he will provide the Court Documents which **both** support his Claim for <u>"Deliberate Indifference"</u> and at the same time will support all of his claims that Both Defendants Violated his Constitutional Rights, pursuant to the <u>Eighth Amendment,</u> and his Civil Rights, by proscribing the Wrong Medication.

5. Plaintiff respectfully submits that he has **Never** made any such claim in that the Defendants <u>**"Long and Doll"**</u> violated Plaintiff's Fourteenth Amendment Rights, nor has the Plaintiff made any such suggestions that Defendants <u>**"Long and Doll"**</u> were being sued in the form of a Violation of Medical Professional Libility. At all times relevant to this action the Plaintiff has repeatedly stated that he is suing for <u>"Deliberate Indifference."</u>

6. Plaintiff has now been able to secure Documents which clearly establish for the Record that; (1) Both Doctor Long and Doctor Doll received Phone Calls from the Local Hospital, in which both doctor's were told to <u>**"STOP"**</u> prescribing the Lo-Pressor to the Patient William M. Leonhauser, as this Medication would Kill him, by stopping his Heart.

7. The Document's having been obtained in which it clearly establishes for the record that (1) Both Doctor's Long and Doll were informed by a Cardiologist to discontinue the Lo-Pressor Immediately; (2) Upon receiving the Phone Call and a subject matter Letter

- 2 -

addressed to **both** Doctors, Plaintiff's Medication of Lo-Pressor was stopped. **HOWEVER** the record further shows that on **"no less than Two Occasion,"** Doctor's Long and Doll re-prescribed the **"Lo Pressor** at DOUBLE THE ORIGINAL DOSAGE."

I: EXHAUSTION OF ADMINISTRATIVE REMEDIES:

8. Defendants and their Counsel claim that Plaintiff has failed to Exhaust Administrative Remedies, and moved for Dismissal of Plaintiff's Complaint, for alleging violating 42 U.S.C.A. Section 1997e(a), a Mandatory requirement of the "Prison Litigation Reform Act."

9. **Contrary**, to what the Defendant's Counsel is claiming in an attempt to get Plaintiff's Complaint dismissed, the Plaintiff has exhausted all available Administrative Remedies. According to Medical Defendant's Counsel who has provided the Court with Exhibit "A" in which shows (a) the Department of Corrections Directives on the Procedures for exhaustion of Administrative Remedies; (b) The Grievance Forms for filing a Grievance; and (c) a Blank Grievance Rejection Form. There was nothing found in Exhibit A that even having remotely to establish that a Grievance was not exhausted. **However,** inside Exhibit B of the Defendants Brief there are a number of Grievance's (4), which Defendant's Counsel claims have not been Exhausted at the Highest Level.

10. The single Grievance Rejection Form, found within Exhibit B, which is dated **November 24, 2010** and is filed under Grievance # **343975-10,** shows that Plaintiff's Grievance was **Rejected** as not having been filed within **"fifteen (15) Days"** after the incident occurred.

- 3 -

11. Grievance # <u>343975-10</u>, clearly shows that Plaintiff provided the Department of Corrections all available dates, including the fact that Plaintiff <u>could not</u> file a Grievance prior to November 15, 2010 as Plaintiff <u>WAS NOT</u> aware that he had been given the Wrong Medications, and that Doctor's Long and Doll were re-prescribing the Lo-Pressor at <u>Double the Original Dosage</u>.

## ARGUMENT:

Medical Defendants Counsel attempts to make a showing that the Plaintiff has <u>failed</u> to Exhaust his Administrative Remedies, by using recent decisions both in the Third Circuit (Court of Appeals) and United States Supreme Court Cases which were decided in 2001, 2006 and 2007. <u>However</u> Defendants Counsel is <u>mistaken</u> as to making a claim that Unexhausted claims shall not be considered by the Courts Whereby Citing <u>Jones V. Bock</u>, 127 S.Ct. 910 (2007).

Plaintiff points to the fact that the Violation was on a continuing basis and that the Wrong Medication Claim was not made fully aware of to the Plaintif until <u>November 2010</u> at which time the Plaintiff immediately filed the Grievance. See <u>Thomas V. Hickman</u>, 2006 W.L. 2868967 *9-10 (E.D.Cal., Oct, 6 2006) here the Court held; "Allowing the case to go forward even though grievance was untimely since the prisoner did not know of her injury until "<u>Long after</u> the Grievance deadline had passed." Also See <u>Gabby V. Luy</u>, 2006 W.L. 167673 *4 (E,D, Wis., Jan 23, 2006), here the Court held; "The prisoner had filed one Grievance, and failed to appeal, then filed a second grievance which was rejected on the grounds that the issue had been raised in the previous grievance. The Court found exhaustion, implicitly rejecting

- 4 -

defendant's argument that **IF** Prisoner tries to exhaust an issue and makes a procedural mistake, he is barred from trying again and doing it right even if the later Grievance is otherwise proper."

Plaintiff submitted his Grievance in a timely manner, as soon a he became aware of the Violations of being given the Wrong Medications for Eighteen (18) Months. After the Grievance Coordinator **"Rejected"** the Grievance, Plaintiff appealed to the Facility Manager, who **ignored** the fact that Plaintiff had provided all Dates involved and showed that the Issue was a Continuing affair.

When the Facility Manager **Denied** the Grievance Appeal, Plaintiff Appealed to the Chief Grievance Officer at the Central Office. The Chief Grievance Officer, also **"Rejected"** the Final Appeal by stating "the Grievance was not submitted timely." The Chief Grievance Officer claimd that "Plaintiff was informed by the Grievance Coordinator to re-submit the Grievance **with dates** of the alleged occurrence and did not do so. You **did not** indicate when you became aware of alleged information received from Medical Staff **Only** entered dates of December 2009, and January 2010."

**Contrary** to the Chief Grievance Officer's claim of that the Grievance Coordinator advised the Plaintiff to re-submit the Grievance, that is a **False Statement**, Plaintiff was **never** told to re-submit the Grievance. Furthermore, Plaintiff's Grievance # **343975-10** clearly explains in detail as to when he was informed of the occurrence of the matter. (**NOVEMBER 2010**).

The Facility Manager addressed the issue of the Growth being found on Plaintiff's Prostrate, and **never** mentioned the Wrong Medication being given Within Plaintiff's Appeal to the Chief Grievance Officer

(<u>December 13, 2010</u>), the Plaintiff clearly establishes that "In November 2010, I uncovered the fact that I had been given the wrong medication for the past 18 months.

<u>Contrary</u> to Medical Defendant's Counsel claim found in the Brief under "**3. ANALYSIS**, that Counsel makes a bold claim that "Second, with regard to the improper prescription of Lo-Pressor, it is without question based on Plaintiff's Complaint that such a <u>mere and unintentional mistake</u> with unknown consequences, which is insufficient as a matter of law to establish deliberate Indifferences, as required for purposes of Eighth Amendment liability. As is apparent in Plaintiff's Complaint, Lopressor was discontinued when Plaintiff explained why he should not be taking same.

<u>First</u>, Plaintiff would establish for the Record that; **(a)** the Lo-Pressor was discontinued after **both** Doctor Long and Doctor Doll received Phone Calls from J.C. Blair Hospital,, and **(b)** it's apparent that Counsel <u>**must have forgotten**</u> that "After Doctor's Long and Doll Discontinued the Lo-Pressor, and **not less** than a wek went by, and Doctor's Long and Doll had "<u>**Repercribed**</u> the Lo-pressor at "DOUBLE THE ORIGINAL DOSAGE." Also Defendant's Counsel must have forgotten that on <u>**no less than Four Occasions,**</u> the Lo-pressor was discontinued but restarted at double the Dosage.

Defense Counsel's "<u>mere and unintentional Mistake</u>, now become a text5
"<u>**Deliberate Indifference Claim**</u> supported for purposes of the Eighth Amendment Violation.

<u>**FURTHERMORE**</u>, attached as **Exhibit <u>B</u>**, a copy of a Page taken from the American Medical Foundation 'Journal' which clearly demonstrate that Lo-Pressor (Metoprolol) has a **"Precaution"** which states that taking Lopressor and having Congestive Heart Failure, might create a problem,

- 6 -

Why would Doctor's Long and Doll Prescribe medications that could kill a Heart Patient when the Drug Company provides a Warning not to issue to a heart patient?

Within Plaintiff's Medical Records there is Four Documents that when viewed by the Court clearly establishes that Doctor's Long and Doll were made aware to discontinue the Drug Lo--Pressor, and within these same Records, there is Three Separate Orders for the Drug Lo-Pressor being re-issued at **Twice** the Original Dosage.

Medical Defendant's Second and Third Argument "Failure to State a Claim upon which Relief can not be granted, is answered by the Plaintiff in the following to save time and space.

On May 23. 2011, this Honorable Court handed down an **Order** Staying all Discovery until after Defendants Motion to Dismiss were reviewed. **However,** in less than Fourteen Days after the Staying Order on all Discovery was Ordered, Medical Defendant's Counsel filed **Subpoena's** for all Discovery of the Plaintiff's Institutional Grievance File. Whereby Violating this Court's Order to Stay Discovery. (See **Exhibit C,** attached hereto).

Medical Defendant's are denying the Plaintiff access to the Court with Documents that exist within his Medical File. Plaintiff "Requested Access to his Medical File (May 2011), Plaintiff then proceeded to Request Copies from his Medical File, for which the Plaintiff was First told that his Records were unavailable and could not be located. The Plaintiff was then told that "to have access to his Medical Records, the Plaintiff needed to Pay for a Single Copy of his entire file, and with the Plaintiff not having the necessary fund, moved to obtain a single copy of his records, and was now being told

that the Plaintiff had to have a copy of a Court's Order before any files would be released to the Plaintiff. Finally, the Plaintiff again sought copies of his Medical Records, and this time the Plaintiff was told "that the Information and Documents that Plaintiff was requesting, first had to be reviewed and <u>Approved</u> by the Medical Defendant's Attorney's before the document would be made available to the Plaintiff.

### <u>INTERFERENCE WITH ACCESS TO THE COURT:</u>

Plaintiff respectfully submits that on July 27, 2011, the Plaintiff placed this "<u>Motion of Objections and Rebuttal</u>" in the Prison Mail Box, with the necessary Cash Slip for Postage, First Class Mail.

On Friday Afternoon July 29, 2011 the Envelop containing this very Motion was returned to Plaintiff's Attention with the Marked Cash Slips, showing that the Block Officer had failed to correctly Stamp and Initial the Cash Slip, on the morning of July 27, 2011 at which time the Mailroom <u>refused</u> to mail out the Court Documents, and waited until Friday Morning July 29, 2011 before returning the Envelop.

This type of procedures is becoming a normal habit of the Correctional Staff here at Smithfield, as well as witnholding the Court's Material for up to Ten (10) Days, which interfere's with Plaintiff's Filing timely.

If this Honorable Court would simply issue forth a Court order, and instructing the Medical Technician to make copies of all Medical Records that Petitioner is seek (Total amount of Page <u>15</u>), this matter would be able to proceed quicker.

Th

- 8 -

The Documents of which the Plaintiff request access would establish that the Medical Defendants did commit Deliberate indifference, and that All Administrative Remedies have been **Exhausted**.

Medical Defendant's Counsel makes another far reaching claim that Plaintiff's Eighth Amendment should be Dismissed for Failing to State a Claim which Relief can be Granted.

Plaintiff respectfully submits that an Eighth Amendment Violation occurred when Doctor's Long and Doll received Letter and phone Calls from Hospital Official requesting the the Lo-Pressor Medication be discontinued.

Medical Defendant's Counsel gives a poor excuse for explaining the "Improper Prescription of Lo-Pressor, by stating "It is without question based on Plaintiff's Complaint that such was a **MERE and UNINTENTIONAL MISTAKE**, with Unknown Consequences. **HOWEVER**, Counsel **failed** to make the Court aware that there is a second part of this story, the one in which Doctor's Long and Doll, where called to the Medical Department, and both received Phone Calls from J.C.Blair Hospital, and Altoona General Hospital, Instructing **both** Doctor Long and Doll to Discontinue the Lo-Pressor, as pointed out by Defense Counsel **HOWEVER** Defense Counsel does not make it Known to the Court that in less than Two Weeks later, **both** Doctor's Long and Doll, began Re-Prescribing the Lo-Pressor only this time It was at **Twice the original Dosage**, this occurred on Three Separate occasions.

**THEREFORE**, Plaintiff submits that he did State a Claim within the Eighth Amendment, and did establish for the record that there is No Penological Interest.

The remaining Two Argauments presented by Medical Defense Counsel dealt with; (a) NOT OBTAINING A CERTIFICATE OF MERIT, in the State Court Procedure, and (b) Preventing the Plaintiff from seeking a Supplemental Action in State Court, should his present action fail in Federal Court.

To these Two claims, the Plaintiff will address separately.

### FIRST: CERTIFICATE OF MERIT:

Normally in cases where an Individual may be seeking to bring issues before the Federal Court's that do not meet the Deliberate Indifference Standard, they would then need to apply and obtain a Certificate of Merit, which is found under Pa.R.Civ,P. **Rule 1042.3**. **HOWEVER** not all cases are required to bring forth a Certificate of Merit, specifically where the Case clearly establishes Deliberate Indifference (such as Plaintiff's case herein), **both** Doctor's Long and Doll were made aware that they were giving the Plaintiff the Wrong Medication for well over Eighteen Months, and upon being provided with said Information the Medical Defendant Stopped the Prescription of Lo-Presspor, as Medical Defendants Counsel was so kind to point that fact out, **HOWEVER,** Medical Defense Counsel **must have** forgotten that in less than Two Weeks after Stopping the Medication **METOPROLOL (Lopressor)**, both Doctor's Long, and Doctor Doll commenced prescribing **"METOPROLOL"** at **Twice** the Original Dosage given, instead of receiving 12.5 Mg's Twice a Day, the Plaintiff was takin 25 Mg Twice a Day.

**Both Doctor's** were aware that giving the Drug **"Metoprolol (Lopressor)**, would cause the Plaintiff's Blood Pressure to crash to dangerous levels, and acuse him to suffer Chest Pains etc., it would also cause the Plaintiff to be Hospitalized.

- 10 -

By knowing that Both Doctor's had prior knowledge or should have had Knowledge enough to read through Plaintiff's Entire Medical History before prescribing Drugs, and understanding what Heart Conditions the Plaintiff suffered from shows that Doctor's Long and Doll were "**Deliberate Indifference**" toward the Plaintiff's Serious Medical needs, and therefore Plaintiff need not obtain a Certificate of merit, **nor** will the Plaintiff be seeking a Civil Action in the State or County Courts.

## CONCLUSION

For all of the foregoing Reasons, including the Medical Defendant's Counsel being required to **approve** the Plaintiff's request to secure medical documents from his Medical File located at the Correctional Institution, Denying the Plaintiff Access to the Court; interfering with Plaintiff's filing in a Timely Manner; and withholding Plaintiff's Legal Documents, the Plaintiff has demonstrated and established that **both** Doctor's Long, and Doll were "Deliberately Indifference towards the Serious Medical Needs of the Plaintiff.

Plaintiff, respectfully submits that **both** the Correctional Defendant and the Medical Defendant's **Motion to Dismiss** should be **Denied**, and that Plaintiff should be issued a Court Order to obtain the Documents within his Medical File to present to this Honorable Court, which will establish all facts contained in the Civil Complaint.

Respectfully Submitted By:

*William M. Leonhauser,*
Plaintiff, Pro-Se

- 11 -

CERTIFICATE OF SERVICE:

I, **William M. Leonhauser**, do hereby **Certify** that on this 27<u>th</u> Day of July, 2011, that I have provided a True and Correct Copy of the foregoing: "PLAINTIFF'S OBJECTIONS AND REBUTTAL TO MEDICAL DEFENDANTS MOTION TO DISMISS." I have placed same in the United States Mail Service, First Class Postage, Pre-Paid, and Mailed to:

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PA
C/O Mary E. D'Andrea, Esq.
    Clerk of Court
U.S. Courthouse
P.O. Box 1148
235 N. Washington Avenue
Scranton, PA 18503-1148

LAW OFFICE OF
MARSHALL, DENNEHEY, WARNER
DOLEMAN, & GOGGIN,
C/O Michael C. Mongillo, Esq.
4200 Crum Mill Road
Suite B
Harrisburg, PA 17112

SOIGA
GOVERNOR'S Office of General Counsel
PA Department of Corrections
1920 Tecxhnology Parkway
Mechanicsburg, PA 17050

RESPECTFULLY SUBMITTED BY:

*(signature)*
William M. Leonhauser,
Plaintiff, Pro-Se
EN-9387
SCI-Smithfield
P.O Box 999
1120 Pike Street
Huntingdon, PA 16652



# METOPROLOL

## VITAL STATISTICS

**DRUG CLASS**
Beta-Adrenergic Blockers

**BRAND NAMES**
Lopressor, Toprol-XL

**OTHER DRUGS IN THIS CLASS**
atenolol, bisoprolol, nadolol, propranolol, timolol

**GENERAL DESCRIPTION**
Metoprolol is prescribed to help manage hypertension, angina, and myocardial infarction. By blocking the action of certain parts of the nervous system, metoprolol slows the heart rate and relaxes blood vessels, thereby lowering blood pressure and easing the work load on the heart. See Beta-Adrenergic Blockers for more information, including possible interactions. Metoprolol may be combined with the diuretic hydrochlorothiazide. For visual characteristics of metoprolol and the brand-name drug Lopressor, see the Color Guide to Prescription Drugs and Herbs.

## PRECAUTIONS

**SPECIAL INFORMATION**
- Metoprolol can make you drowsy, dizzy, and lightheaded. Avoid activities that require alertness, such as driving, until you know how you react to this drug.
- Tell your doctor if you are planning surgery or have any of the following conditions, which metoprolol may complicate: allergies; emphysema; congestive heart failure; diabetes mellitus; hyperthyroidism; impaired liver or kidneys; depression; myasthenia gravis; circulatory disease.
- Do not use metoprolol if you have a bronchospastic disease, bronchial asthma, or a severe chronic obstructive pulmonary disease.
- Suddenly stopping this drug may cause or increase heart problems. Dosage must be reduced gradually by your doctor.

## TARGET AILMENTS

Heart disease, including angina (chest pain), heart attack, and abnormal heart rhythms

Hypertension

## SIDE EFFECTS

### NOT SERIOUS
- Decreased sexual ability
- Drowsiness or weakness
- Insomnia; nervousness
- Upset stomach; change in bowel habits

TELL YOUR DOCTOR IF THESE EFFECTS BECOME BOTHERSOME.

### SERIOUS
- Trouble breathing
- Dizziness; depression
- Chest pain; fast or irregular heartbeat
- Prolonged reduced circulation; congestive heart failure
- Sudden shortness of breath
- Sweating, trembling and weakness

CALL YOUR DOCTOR IMMEDIATELY.



511

EXHIBIT B

