# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM M. LEONHAUSER,** : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 1:11-0341** |
| v. : | |
| : | **(CALDWELL, D.J.)** |
| **ROBERT A. LONG, M.D.; and** : | **(MANNION, M.J.)** |
| **CHRISTINE DOLL, M.D.,** | |
| : | |
| **Defendants** | |
| : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is a motion to dismiss the plaintiff's complaint filed on behalf of defendants Long and Doll, which the court has converted to a motion for summary judgment. (Doc. No. 32). Based upon the court's review of the motion and related materials, it is recommended that the motion be granted to the extent that the defendants argue that the plaintiff failed to exhaust his administrative remedies with respect to the claims which he now attempts to raise.

By way of relevant background, on February 22, 2011, the plaintiff, an inmate at the State Correctional Institution at Smithfield, Huntingdon,

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

Pennsylvania, filed the instant civil rights action pursuant to 42 U.S.C. §1983. (Doc. No. 1). The proper prisoner authorization form and application to proceed *in forma pauperis* were filed on March 7, 2011. (Doc. No. 8, Doc. No. 9). On the same day, a financial administrative order was issued directing the prison warden/superintendent to deduct the proper filing fee for the instant action from the plaintiff's inmate account. (Doc. No. 10).

By order dated March 24, 2011, it was directed that process issue. (Doc. No. 12).

After having been granted an extension of time to do so, (Doc. No. 24), on June 27, 2011, the moving defendants filed the instant motion to dismiss the plaintiff's complaint with attached exhibits, (Doc. No. 32), and a brief in support thereof, (Doc. No. 34). The plaintiff filed a brief in opposition to the motion to dismiss on August 16, 2011. (Doc. No. 38).

Upon review of the pending motion, the court determined that matters outside of the pleadings were submitted for consideration which required the court to convert the motion to one for summary judgment. Therefore, by order dated January 3, 2012, the court converted the motion to dismiss to one for summary judgment and granted the plaintiff additional time to respond to the motion as such. (Doc. No. 44). The plaintiff then requested, (Doc. No. 46), and was granted, (Doc. No. 47), an additional extension of time to respond to

the motion. On February 9, 2012, the moving defendants re-filed with the court an exhibit to their motion which was determined to be incomplete. (Doc. No. 49). On the same day, the plaintiff filed his brief in opposition to the defendants' motion for summary judgment. (Doc. No. 50).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the

absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In his complaint, the plaintiff alleges that he suffers from a heart condition for which he has a pacemaker and Parkinson's Disease. The plaintiff alleges that he was denied adequate treatment by defendants Long and Doll for these conditions while confined at SCI-Smithfield. According to the plaintiff, defendants Doll and Long prescribed him the wrong medication,

(i.e., Lopressor), even though they were instructed to discontinue that medication. On four different occasions, the plaintiff claims that doctors at the local hospital instructed that all of the plaintiff's medications be reviewed and that medications that were not specifically required be discontinued. The plaintiff alleges that he was made to take this medication for eighteen months which caused him to suffer from low blood pressure and caused his pacemaker to malfunction.

In addition to the issues relating to his medication, the plaintiff claims that defendants Doll and Long were told that the "leads" to the heart from the pacemaker were poking through his chest wall and, if they became infected, the plaintiff could die. He claims that, despite this knowledge, defendants Doll and Long refused to arrange replacement surgery claiming that it was too expensive and not necessary. The plaintiff goes on to allege, however, that after showing the defendants that the lead wires were beginning to poke through his chest skin, he was sent to see a cardiologist, who performed an examination of him. When the plaintiff was not satisfied with the treatment by this cardiologist, he filed a complaint and arrangements were made for him to see a different cardiologist who remedied the situation.

Defendants Long and Doll are also alleged to have denied the plaintiff access to a neurologist to upgrade his Parkinson's medication.

Based upon the allegations set forth in his complaint, the plaintiff is seeking declaratory and injunctive relief, as well as compensatory and punitive damages.

In response to the allegations set forth in the plaintiff's complaint, the defendants have submitted materials which indicate that the plaintiff has filed four grievances against defendants Doll and/or Long arising out of the prescription of Lopressor or care and/or treatment rendered for conditions of third degree heart block and Parkinson's disease. (Doc. No. 32, Ex. A). These grievances were assigned numbers 278737-09, 278738-09, 322331-10, and 343975-10. (Doc. No. 32, Ex. B). The initial three grievances, i.e., numbers 278737-09, 278738-09, and 322331-10, were not pursued through final appeal as per DC-ADM 804 Policy Guidelines. (Id.). The final grievance, i.e., number 343975-10, was rejected as having been untimely filed by the plaintiff. (Id.).

Among other things, the defendants argue in their motion that, because the plaintiff has not exhausted his administrative remedies with respect to the claims which he now attempts to raise, his complaint should be dismissed. (Doc. No. 33, pp. 6-7).

The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court. The

act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp.2d 884, 894–95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements

"eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Nussle, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227–32 (3d Cir. 2004).

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. see www.cor.state.pa.us, DOC Policies, Policy No. DC–ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

In response to the defendants' materials, the plaintiff does not dispute that his initial three grievances were not pursued through final appeal. He

argues, however, by way of affidavit, that he was unaware that there was a problem with being prescribed Lopressor until November 2010, at which time he filed the final grievance at issue. He argues, therefore, that the grievance was not untimely. In reviewing the plaintiff's complaint, however, he admits through the allegations of his complaint that in April or May of 2010, he secured a copy of his local hospital records and a copy of a report sent to SCI-Smithfield which, he claims, instructed the doctors at SCI-Smithfield to discontinue the Lopressor. (Doc. No. 1, ¶21). Therefore, the plaintiff's own allegations contradict his affidavit and indicate that he was aware, at least as of April or May of 2010, about a possible issue related to Lopressor. Despite this, he did not file the grievance at issue until November of 2010, at which time it was deemed untimely. As discussed above, the exhaustion requirement has a procedural default component. Because the plaintiff failed to file his grievance in a timely manner, he procedurally defaulted with respect to the claims which he now attempts to raise, and the defendants motion should be granted on this basis.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

the motion to dismiss the plaintiff's complaint filed on behalf of defendants Long and Doll construed by the court as a motion for summary judgment, **(Doc. No. 32)**, be **GRANTED** to the extent

that the defendants argue that the plaintiff failed to exhaust his administrative remedies prior to bringing the instant action[2].

                        s/ *Malachy E. Mannion*
                        **MALACHY E. MANNION**
                        **United States Magistrate Judge**

**Date: February 15, 2012**

O:\shared\REPORTS\2011 Reports\11-0341-02.wpd

---

[2] In light of the fact that the court finds the plaintiff's claims unexhausted, the remaining arguments raised in the defendants' motion to dismiss converted to a motion for summary judgment have not been addressed herein.